# Charles Rockland Pepper's Estate. Edward Pepper's Appeal.

*Will—Trusts and trustees—Distribution.*

George Pepper by his will gave a share of his estate in trust for his son Charles for life, and from and after his death, then to the use of such of his children and issue, and in such shares and for such estates as he shall by last will appoint, and, in default of such appointment, then to the use of all his children that may be living at his death. In the event of the death of Charles without issue, his share was given to testator's then surviving children and the issue of any deceased children, in the shares and proportions and for the estates they would have taken under the intestate law of Pennsylvania, if Charles had died seized in fee simple of such estate without any wife surviving. Charles had one child, Charles R., who executed a deed of trust of "one half part of the estate, real and personal, in which he (Charles R.) will or may become entitled in case of his surviving the said father, Charles, under the provisions of the said will of his grandfather, the said George, deceased." The trustee was to hold the estate in trust for Charles R. for life, and after his decease in trust for his children and issue, "and in default of lawful issue him surviving, then in trust to grant, convey, assign and pay the said trust estate and premises unto such person or persons as would have been entitled to the same under the will of the said George, deceased, and for such estates and interest and with and under the same powers, conditions and limitations, as far as subsisting and applicable, and with the same effect as if the said Charles R. had never been born." Charles died without having validly exercised his power of appointment. Subsequently Charles R. died unmarried, and without lawful issue, but leaving a will by which he gave his estate to a stranger. *Held*, that upon the death of Charles R. the share covered by the deed of trust passed under the will of George to George's then surviving children, and the issue of deceased children.

After the death of Charles R., Edward, a son of George, died leaving a will by which he gave three fourths of all the rest, residue and remainder of his individual estate to two friends and one fourth to a nephew. He further stated in his will: "In making this my last will and testament, my intention is, to devise my individual estate only which is composed of accumulations of income, my only son being amply provided for by the

trust estate under the will of my father." *Held*, that Edward's interest in Charles's share passed to his residuary legatees.

Argued Jan. 24, 1895.   Appeal, No. 173, July T., 1894, by Edward Pepper, from decree of C. P. No. 4, Phila. Co., Dec. T., 1890, No. 705, dismissing exceptions to auditor's report. Before Sterrett, C. J., Green, Williams, McCollum, Mitchell, Dean and Fell, JJ.   Affirmed.

Exceptions to auditor's report.

From the record it appeared that Henry Flanders, Esq., was appointed auditor to settle and adjust the account of Joseph Norris, trustee under a deed of trust executed by Charles Rockland Pepper on July 2, 1868.

The auditor reported as follows :

" 1. George Pepper, by his will, executed on Jan. 5, 1846, proved at Philadelphia, Jan. 13, 1846, provided, with respect to his residuary estate, as follows :

" ' Item.   All the rest, residue and remainder of my estate, real and personal, except my Fairy Hill estate, hereafter disposed of, I order and direct to be distinctly and separately valued, item by item, and divided in the manner hereafter mentioned into as many parts as I shall leave children and issue of a deceased child or children living at my death, the issue of any deceased child or children, to represent their parent or respective parents, and each of the said issues to be considered in the division as one part only, that is to say : Five suitable persons to make the said valuation and division, shall be appointed as soon as conveniently may be after my death, by my surviving children, or a majority of them, under their hands and seals, and if they cannot agree, then by my executors, or a majority of them, under their hands and seals.   The said five persons, being thus appointed, shall then proceed to value my residue as aforesaid, and to divide the same into the requisite number of equal parts as aforesaid, allotting to each share an equal portion of real and personal estate, of property improved and productive, and property unimproved and unproductive, as they conveniently can.   The shares so divided shall be drawn for in the manner the persons making the division shall direct, so as to designate a particular share, or part of my said estate,

for each child, and for the issue of any deceased child, to whom the same shall fall upon the said drawing. And my will is, that in all the acts of the said valuers in making the said valuation and division, a major part of them, respectively, shall have the entire power of the whole number in case of difference. . . . And I desire the said valuers to execute a plan and statement of the said valuation and allotment, under their hands and seals, or the hands and seals of a majority of them, and to have the same acknowledged or proved, and recorded in the proper office. And I give, devise and bequeath to all my said surviving children, and to the issue of any of my deceased children, such issue to stand respectively in the place of their parent, and to take together only the share their respective parent, if living, would have taken, one equal share or part of all my said residuary estate, real and personal, allotted and drawn for as aforesaid; all my said children, and the issue of any deceased child or children, except the three sons and two daughters hereafter mentioned, to have and to hold their respective shares to them, respectively, and their respective heirs and assigns forever. And I do authorize, empower and direct my executors, or a majority of them, to convey the said respective shares of real and personal estate so drawn for and allotted as aforesaid, to the said respective children, and issue of deceased children, their respective heirs and assigns forever. And so far as regards the shares which may upon such drawing fall to my three sons, Edward, Charles and Lawrence, and my two daughters, Mary Norris and Catharine Thompson, respectively, I do give and devise the same to my executors, and the survivors and survivor of them, and the heirs of the survivor, in trust, as to the said respective shares, to the use of my said three sons and two daughters, respectively, to whom the same shall respectively fall upon the said drawing, for and during their respective natural lives; and from and after their respective deaths, then to the use of such of their respective children, and issue, and in such shares and for such estates as they shall respectively by last will appoint, and in default of such respective appointment, then to the use of all the children of the son or sons, daughter or daughters respectively, so failing to appoint, that may be living at their respective deaths, and the issue of any deceased child

or children, their heirs, executors and administrators, as tenants in common, in equal shares; the issue of any deceased child to stand in the place of their parent, and to take only the share their parent would have taken if living; and in default of such issue, then as to one equal fourth part of the share appertaining to the son or daughter respectively, whose issue shall fail at his or her death, to the use of such person or persons, and for such estates, and in such portions as the said respective son or daughter. shall in any way appoint; and as to the remaining three fourth parts, and also as to the said one fourth part, so far as the same shall not have been appointed otherwise by the said son or daughter, to the use of my then surviving children, and the issue of any of my children then deceased, in the shares and proportions, and for the estates which they would have taken under the intestate law of Pennsylvania, if the said respective son or daughter had died seized in fee simple of such estate, without any wife or husband surviving him or her. . . .'

" The power of appointment vested in the said Charles Pepper in and by the said will was not validly executed. See Pepper's Appeal, 120 Pa. 235.

" 2. Mr. Freedley offered in evidence the partition of the estate of George Pepper, deceased, made by deed dated January 13, 1847, recorded at Philadelphia, in Deed Book A. W. M., No. 29, page 4; deed being made by Coleman Fisher, George N. Baker, John M. Ogden, D. Henry Flickwin, and Andrew D. Cook, being the five persons appointed in pursuance of the will of George Pepper, to make partition and division of his estate; on page 29 of which deed, and subsequent pages, a particular share of the estate is set apart and allotted to Charles Pepper, under the limitations contained in the will of George Pepper, concerning that particular share.

: · " 3. Charles Rockland Pepper was the only child of Charles Pepper living at his death, which occurred May 3d, 1887. The son Charles Rockland Pepper died without issue March 7, 1890. By deed of trust, executed July 2, 1868, recorded in Deed Book J. T. O., No. 238, page 436, etc., Charles Rockland Pepper provided that one-half of the estate, real and personal, to which he would or might become entitled in case he survived his father, Charles Pepper, under the provisions of the will of

his grandfather, George Pepper, should, in the event of his, the said Charles Rockland Pepper, dying without lawful issue surviving him, be held 'in trust to grant, convey, assign, and pay the said trust estate and premises unto such person or persons as would have been entitled to the same under the will of the said George Pepper, deceased, and for such estates and interests, and with and under the same powers, conditions, and limitations as far as subsisting and applicable, and with the same effect as if the said Charles Rockland Pepper had never been born.'

" 4. The question submitted to the auditor by the learned counsel (Mr. George Wharton Pepper and Mr. Freedley on the one side, and Messrs. Biddle & Ward on the other) is whether the trust estate of Charles Rockland Pepper should be distributed under the general clause of George Pepper's will or the particular clause of that will which relates to the trust estate of Charles Pepper.

" 5. To support the affirmative of the last branch of the inquiry, it is cogently said that the will of George Pepper explicitly provides how the trust estate of Charles Pepper shall go in case he dies without issue, namely, to the use of his (George Pepper's) surviving children, and the issue of any of his children then deceased, ' in the shares and proportions, and for the estates which they would have taken under the intestate law of Pennsylvania,' if the said Charles Pepper had died seized in fee simple of such estate without any wife surviving him.

" 6. Who then would have been entitled to this share, to wit, the trust estate of Charles Pepper, if Charles Rockland Pepper had never been born ?   The answer is, that if Charles Rockland Pepper had never been born, then his father, Charles Pepper, would have died without issue, and thereupon become the propositus, from whom the line of descent is to be traced.

" 7. The auditor agrees with this contention, which he thinks it is needless to elaborate, and holds that the estate before him for distribution descends to and becomes divisible in eighths or multiples thereof among the surviving brothers and sisters of Chas. Pepper, and the issue of deceased brothers and sisters."

The estate covered by the deed of trust of July 2, 1868, is described in the deed as follows : " One full equal and undivided moiety or half part of, in and to all and singular the estate

real and personal whatsoever and wheresoever to which he the said Charles Rockland Pepper now is or may at any time hereafter be entitled in possession, reversion or remainder expectancy or otherwise howsoever, under and by virtue of the above recited last will and testament of his grandfather, the said George Pepper, deceased, as of any appointment made or to be made by his said father Charles Pepper or otherwise howsoever."

The nature of the trust was specified as follows : " In trust to let and demise the real estate and to collect and receive the rents and income thereof and to place out and continue the personal estate at interest and collect and receive the interest, income and dividends thereof and after first deducting all taxes, charges, repairs and expenses of every kind and nature whatever attending the management of the trust estate and the discharge of the ·trust, to pay over the residue and remainder of the said rents, interest, income and dividends in quarter yearly payments unto such person or persons as the said Charles Rockland Pepper, from time to time but not by way of assignment or anticipation, nominate and appoint in writing to receive the same or in default of such nomination unto the said Charles Rockland Pepper for his own use and behoof and so as not to be liable for his debts, contracts or engagements in anywise whatsoever for and during the full end and term of his natural life and from and immediately after the decease of the said Charles Rockland Pepper, then in trust to grant, convey, assign and pay the trust estate and premises unto all the children of the said Charles Rockland Pepper that may then be living and the lawful issue of such of them as may then be deceased in such parts, shares and proportions and for such interests therein as he the said Charles Rockland Pepper may by any instrument or writing in the nature of a last will and testament direct, limit and appoint, and for want of such appointment, then in trust to grant, convey, assign and pay the said trust estate and premises unto all his children who may then be living and the lawful issue of such of them as may then be deceased, their heirs, executors, administrators and assigns forever in equal parts and shares so nevertheless that such issue take only and among themselves equally divide such part and share as his, her or their deceased parent would have had and taken if then

living, and in default of lawful issue him surviving then in trust to grant, convey, assign and pay the said trust estate and premises unto such person or persons as would have been entitled to the same under the will of the said George Pepper, deceased, and for such estates and interests and with and under the same powers, conditions and limitations as far as subsisting and applicable and with the same effect as if the said Charles Rockland Pepper had never been born."

The material portions of the will of Edward Pepper deceased, a son of Geo. Pepper, were as follows:

" Item 3. All the rest residue and remainder of my individual estate real as well as personal of which I shall die seized or possessed whatsoever and wheresoever situate now owned or hereafter acquired and all my interest therein I direct to be divided into four equal parts or shares. Two of which parts or shares I give devise and bequeath to my friend Arthur Phelipot his heirs and assigns absolutely. One other of which parts or shares I give devise and bequeath to Elvina Eliza Mary Phelipot wife of Arthur Phelipot her heirs and assigns absolutely.

. " The remaining fourth part or share thereof I give devise and bequeath to my nephew David Pepper his heirs and assigns absolutely.

" It is my desire and express wish that the above devise of my residuary estate shall not lapse by the death of either of the legatees but in case of death without issue shall be equally divided among the survivors or survivor of them.

" Item 4. In making this my last will and testament my intention is to devise my individual estate only which is composed of accumulations of income, my only son being amply provided for by the trust estate under the will of my father."

The auditor awarded the share of Edward to the residuary legatees mentioned in Edward's will.

﹒ Edward Pepper, a son of Edward Pepper, deceased, excepted:

" 1. Because the auditor has erred in reporting that the trust estate should be divided under the particular clause in George Pepper's will relating to the trust estate of Charles Rockland Pepper instead of under the general clause of George Pepper's will.

" 2. Because the learned auditor has erred in reporting that

Charles Pepper became the propositus from whom the line of descendants are to be traced.

" 3. Because the learned auditor has erred in reporting that one eighth, namely, the seventh in order treated in his report, passed to Edward Pepper, who died March, 1892, and that the same passed under his will to David Pepper, his executor, and the beneficiaries named therein, in proportions stated in said report, whereas he should have reported that the said one eighth part is properly distributable and payable to Edward Pepper, M. D., the only surviving child of said Edward Pepper, under the general clause of the will of George Pepper, deceased.

" 4. Because the learned auditor has erred in disregarding the provision in the said deed of trust, that the trust estate is to be assigned with and under the same powers, conditions, and limitations as far as subsisting and applicable as under the original will of George Pepper, and has adopted a construction which, of necessity, gives it to any parties who could take under it an estate free of all conditions and limitations.

" 5. Because the learned auditor has erred in holding and reporting that the parties taking under the said trust deed take absolute estates and in fee simple, and not estates subject to the same conditions and limitations, and with the same powers so far as subsisting and applicable, as under the original devises under George Pepper's will.

" 6. Because the learned auditor erred in his construction of the will of George Pepper in holding and reporting that after the death of his son Charles, of the share allotted to him, the interests of the persons taking and to take the same under its limitations would vest in them absolutely and free of trust, and not holding and reporting that said interests would accrue to them as if part of their original shares, and go to augment their original shares under said will and subject to the same conditions and with the same powers, which is the construction required by the context and the general spirit of the will."

Exceptions dismissed and exceptant thereupon appealed.

*Errors assigned* were (1–6) dismissal of exceptions, quoting them.

*R. L. Ashhurst* and *S. Dickson*, for appellant, cited : Davers v. Dewees, 3 P. Wms. 40; Circuitt v. Ferry, 23 Beav. 275

Hawks v. Longridge, 29 L. T. (N. S.) 449; Harris v. Harris, 3 Ir. Eq. 610; Theobald on Wills, p. 189; Stickle's Ap., 29 Pa. 234; Duffield v. Morris, 8 W. & S. 348; Brown v. Whiteway, 8 Hare, 145; Spence v. Spence, 104 E. C. L. 199; Sweetapple v. Bindon, 2 Vernon, 536; Baile v. Coleman, 2 Vernon, 670; Butterfield v. Butterfield, 1 Ves. Sr. 133; Gray's Est., 147 Pa. 67; 2 Jarman on Wills, 17; Shrynsher v. Shrynsher, 1 Stuart, 566; Waln's Est., 156 Pa. 195; Kepple's Ap., 53 Pa. 211; Pa. Co. v. Price, 7 Phila. 465; Bagot's Case, L. R. 3 Ch. 1893, 348.

*A. T. Freedley* and *John S. Gerhard*, for appellees, cited: Bagot's Case, L. R. 1893, 3 Ch. 348; Pepper's Ap., 120 Pa. 235; act of June 4, 1879, P. L. 88; Stehman v. Stehman, 1 Watts, 466; Miller's Ap., 113 Pa. 459; Roland v. Miller, 100 Pa. 50; Ferry's Ap., 102 Pa. 207; East v. Cook, 2 Ves. Sr. 30; Appeal of Board of Missions, 91 Pa. 514; 2 Williams on Exrs., pp. 41, 62; Stevens's Ap., 154 Pa. 209.

PER CURIAM, Feb. 4, 1895.

All the facts necessary to a proper understanding and correct disposition of this case are sufficiently presented in the auditor's report; and the controlling questions arising thereon appear to have been carefully considered and rightly decided by him. Our examination of the record, with reference to the specifications of error, has failed to convince us that there is anything in either of them that requires a reversal or modification of the decree; nor do we think that either of the questions involved requires further elaboration. All that is necessary to be said in relation to any of them will be found in the learned auditor's report; and on it the decree is affirmed and appeal dismissed with costs to be paid by appellant.